G. JILL BASINGER - State Bar No. 195739
jbasinger@glaserweil.com
STEVEN BASILEO - State Bar No. 157780
sbasileo@glaserweil.com
GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for Defendants
RT Features U.S., LLC,
Joseph B. Geus and J.G. Business Management, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LUIZ MUSSNICH, an individual, | CASE NO.: 2:20-cv-09679 |
| Plaintiff, | Hon. Marc C. Scarsi |
| v. | **MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)** |
| RODRIGO TEIXEIRA, an individual; RT FEATURES U.S., LLC, a Delaware limited liability company; US ONE COMERCIO E SERVIÇOS DE CRIAÇAO E PRODUÇAO DE OBRAS COM DIREITOS AUTORAIS, S.A., a Brazilian corporation; RT COMERCIO E SERVIÇOS DE CRIAÇAO E PRODUÇAO DE OBRAS COM DIREITOS AUTORAISM LTDA., a Brazilian limited liability company; CAMISA TREZE CULTURAL SS LTDA., a Brazilian limited liability company; JOSEPH B. GUES, an individual; J.G. BUSINESS MANAGEMENT, INC., a California corporation; [continued on next page], | DATE:            January 25, 2021<br>TIME:             9:00 a.m.<br>COURTROOM:   7C<br><br>TRIAL DATE:   None |
| Defendants. | |

Glaser Weil

1

1942332

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on January 25, 2021 or as soon as the matter may be heard in Department 7C of the First Street Courthouse, 350 W. 1st Street, Courtroom 7C, 7th Floor, Los Angeles, California 90012, Defendants RT Features U.S., LLC, Joseph B. Geus and J.G. Business Management, Inc. ("Defendants") will, and hereby do, move to dismiss Plaintiff's Complaint in its entirety and with prejudice. This Motion is made on the ground that Plaintiff's Complaint fails to state a claim on which relief can be granted.

This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the other pleadings and documents on record in this matter, and such other written or oral evidence and argument as may be presented at or before the time this Motion is deemed submitted by the Court.

The parties met and conferred regarding this Motion on December 14, 2021 and were unable to reach agreement.

DATED:  December 21, 2020

GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP

By: */s/ G. Jill Basinger*
G. JILL BASINGER
*Attorneys for Defendants*
*RT Features U.S., LLC,*
*Joseph B. Geus, and*
*J.G. Business Management, Inc.*

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................. 7

II.   STATEMENT OF FACTS ............................................................................... 11

III.  RELEVANT LAW .......................................................................................... 12

IV.   ARGUMENT .................................................................................................. 13

      A.   Plaintiff Lacks Standing To Assert His 10b-5 Claim ........................ 13

      B.   Plaintiff's Claims Are Time-Barred ................................................... 13

      C.   Plaintiff Has Failed To Allege Reasonable Reliance or Satisfy
           Rule 8 ................................................................................................. 17

      D.   Plaintiff Has Failed To Allege Fraud With Particularity ................... 19

      E.   Plaintiff Has Failed To Adequately Allege Damages Or Actual
           Interference With Economic Relations ............................................... 20

V.    CONCLUSION ............................................................................................... 21

Glaser Weil

# TABLE OF AUTHORITIES

Page

# FEDERAL CASES

*AB Investment LLC v. Regal One Corp.*,
2009 WL 10675242 (C.D. Cal. 2009) ............................................... 13

*Ambassador Hotel Co. v. Wei-Chuan Inv.*,
189 F.3d 1017 (9th Cir. 1999) ............................................... 20

*Aschcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................... 12, 20

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1990) ............................................... 12

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ............................................... 13

*Briskin v. Ernst & Ernst*,
589 F.2d 1363 (9th Cir.1978) ............................................... 15

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ............................................... 13, 19

*McCabe v. Ernst & Young, LLP*,
494 F.3d 418 (3d Cir. 2007)............................................... 20

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
730 F.3d 1111 (9th Cir. 2013) ............................................... 20

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
774 F.3d 598 (9th Cir. 2014)............................................... 20

*Raschio v. Sinclair*,
486 F.2d 1029 (9th Cir.1973) ............................................... 17

*Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*,
552 U.S. 148 (2008)............................................... 20

*Stuart v. Cadbury Adams USA, LLC*,
2010 WL 11596555 ............................................... 17, 19

*Swartz v. KPMG*,
476 F.3d 756 (9th Cir. 2007) ............................................... 13

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008)............................................... 21

*Tania Lee Price (Tilley) v. Charles Schwab & Co., Inc.*,
2015 WL 9694811 (C.D. Cal. 2015)............................................... 13, 15

Glaser Weil

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

*Vascular Imaging Professionals, Inc. v. Digirad Corporation*,
   401 F.Supp.3d 1005 (S.D. Cal. 2019) ........................................................... 21

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir.2003) ...................................................................... 19

*Von Grabe v. Sprint PCS*,
   312 F.Supp.2d 1285 (S.D. Cal. 2003) ......................................................... 19

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...................................................................... 12

<u>**STATE CASES**</u>

*Augusta v. United Service Automobile Assn.*,
   13 Cal.App.4th 4 (1993) ............................................................................ 14

*Beckwith v. Dahl*,
   205 Cal.App.4th 1039 (2012) ..................................................................... 20

*Crum v. City of Stockton*,
   96 Cal.App.3d 519 (1979) .......................................................................... 20

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) ............................................................................... 14

*Glaski v. Bank of America*
   (2013) 218 Cal.App.4th 1079 ..................................................................... 17

*Kleefeld v. Superior Court*,
   25 Cal.App.4th 1680 (1994) ....................................................................... 16

*McKelvey v. Boeing North American, Inc.*,
   74 Cal.App.4th 151 (1999) ......................................................................... 14

*Service by Medallion, Inc. v. Clorox Co.*
   (1996) 44 Cal.App.4th 1807 ....................................................................... 17

*So v. Shin*,
   212 Cal.App.4th 652 (2013) ....................................................................... 14

*Sun'n Sand, Inc. v. United California Bank*,
   21 Cal.3d 671 (1978) ................................................................................. 14

<u>**FEDERAL STATUTES**</u>

15 U.S.C. § 78j(b) ........................................................................................ 13

<u>**FEDERAL RULES**</u>

17 C.F.R. 240.10b-5 ................................................................................ 13, 20

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 12

Fed. R. Civ. P. 8 ............................................................................................ 12, 17, 19, 20

Fed. R. Civ. P. 9(b) ....................................................................................................... 12, 20

**Glaser Weil**

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

### MEMORANDUM OF POINTS AND AUTHORITIES

Defendants RT Features U.S., LLC, Joseph B. Geus and J.G. Business Management, Inc. ("Defendants") will, and hereby do, move to dismiss Plaintiff's Complaint in its entirety and with prejudice.

## I.  INTRODUCTION

"Quem tem telhado de vidro não atira pedra no do vizinho."

Assuming the Court is unfamiliar with this Brazilian proverb or does not understand Portuguese, in English this is translated and interpreted as the following well-known maxim:

"Those who live in glass houses should not throw stones."

With his Complaint in the present action, Plaintiff Luiz Mussnich, a Brazilian citizen residing in Brazil, spews vindictive personal attacks against Defendant Rodrigo Teixeira, another Brazilian citizen residing in Brazil, claiming that Plaintiff's association with Defendant Teixeira and RT Features has ruined Plaintiff's self-proclaimed "strong reputation" as a "professional" in the management of finances.

However, Plaintiff disregards his own unsavory history. The crucial fact Plaintiff intentionally failed to reveal in his Complaint – and purposefully never disclosed to Teixeira or RT Features – is that he destroyed his own reputation long ago, when he received **a five-year prison sentence from the Brazilian government for securities and tax fraud**.

And, astonishingly, Plaintiff learned nothing from his fraud and tax convictions. A few examples of Plaintiff's continuing financial malfeasance after his convictions are illustrative.

- Plaintiff held a position as director of a Brazilian bank co-owned by his father-in-law, Francisco Gros, that was forced into liquidation at a time when the financial institution owed over $6 million to another bank owned and operated by the Brazilian government.
- Plaintiff orchestrated a broad-ranging scheme designed to avoid tax

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

liability in Brazil involving his wife (Alexandra Gros), brother-in-law (Carlos Gros) and uncle-in-law (Marcelo Gros) through an apparent abuse of corporate and tax legal formalities in connection with various shell investment companies formed in offshore tax havens.

- When Plaintiff's father-in-law faced a lawsuit in Brazil demanding his removal as an officer of a Brazilian bank based on, among other charges, that he personally owned various companies formed in tax havens, the litigation exposed Plaintiff's involvement as proxy for such offshore companies.

Moreover, if his own allegations in his Complaint are to be believed, Plaintiff likely faces sanctions by the United States Securities and Exchange Commission (SEC) for his repeated and active role in brokering numerous investments between RT Features and his "network of wealthy friends, colleagues, and clients" without his maintaining the required registration as a broker-dealer with respect to any such transactions.

In stark contrast, Defendant RT Features, according to Forbes, "is one of the most progressive and innovative outfits in the film industry." From its offices in Sao Paulo, Brazil,[1] RT Features, headed by Teixeira, develops and produces films that consistently garner broad critical acclaim, earn major award consideration, including winning an Oscar, compete in major international film festivals, like Cannes and Venice, and often generate significant revenue when distributed compared against relatively modest production costs. In fact, despite the long odds of success in the film business, especially involving a company over 6,000 miles away from Hollywood,

---

[1] RT Features does not have any offices or operations in California or anywhere in the United States. RT Features was formed in Delaware, which, since the beginning of corporate history in this country, has been the legal home to America's largest companies, with currently over 65% of the Fortune 500, and other notable companies including Bank of America, Coca-Cola and Google, incorporated in the state. Needless to say, Delaware is not a nefarious tax haven, unlike the jurisdictions Plaintiff is suspected to have used.

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

RT Features' investors in its productions have, for the most part, earned repayment of their principal investment with an average return on their investment of twenty percent (20%). Thus, Plaintiff's reputation could only benefit from his association with RT Features.

Plaintiff's Complaint also disregards a basic tenet of jurisprudence: one needs to state a legal cause of action in order to successfully pursue litigation. For a host of reasons, Plaintiff's Complaint falls well short of the mark.

First, Plaintiff lacks standing to assert his 10b-5 claim. Plaintiff alleges that he was induced to participate in a scheme to defraud investors who purchased "what can be classified as securities under United States law." But Plaintiff does not allege that he himself was a purchaser or seller any of securities, nor does he provide facts to support his vague assertion that the investments at issue qualify as securities for purposes of a 10b-5 claim. Both of these defects are fatal to Plaintiff's 10b-5 claim.

Second, Plaintiff has not alleged facts that support a finding of reasonable reliance. The crux of Plaintiff's 10b-5 and state law fraud claims (and the interference claims that rely on Plaintiff's fraud allegations) is Plaintiff's contention that he and his clients relied on promises by RT Features CEO Rodrigo Teixeira that the film participation deals in question would provide "very high returns." But everyone knows that success is never guaranteed in the film business, especially the "low budget independent film" business (as Plaintiff describes RT Features' business), and Plaintiff, a self-described "successful investment professional, with a strong reputation for managing finances for high-net-worth individuals" could not reasonably have relied on purported guarantees of "very high returns." Moreover, it is RT Features' custom and practice to require any investor to sign an agreement that includes the following legal disclaimer (emphasis in original):

> [Investor] . . . fully understands, and can withstand, that there is an extremely high risk of loss associated with making the [investment] to [RT Features]. *[INVESTOR] REPRESENTS THAT NO ASSURANCES, GUARANTIES, REPRESENTATIONS OR WARRANTIES HAVE BEEN GIVEN THAT ANY [RETURN OF ANY INVESTMENT] WILL*

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Glaser Weil

*BE REALIZED, AND THAT [INVESTOR] IS NOT RELYING AND HAS NOT RELIED ON ANY STATEMENTS, REPRESENTATIONS OR WARRANTIES OF ANY PERSON OR ENTITY IN MAKING THE DECISION TO PROVIDE THE [INVESTMENT] TO [RT FEATURES]. [INVESTOR] IS SOPHISTICATED IN INVESTMENT AND BUSINESS MATTERS AND IS KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY AGREEING TO PROVIDE THE [INVESTMENT].*

In light of this disclaimer and acknowledgment, neither Plaintiff nor his sophisticated "high-net-worth" clients could have reasonably have relied on purported guarantees of "very high returns."

Third, Plaintiff's 10b-5 claims and his state law claims are untimely. To the extent he provides any information as to the timing of the alleged fraud, Plaintiff alleges that he was induced to participate in the alleged scheme in or around 2009. 10b-5 claims must be brought within two years after the fraud should have been discovered and not more than five years after the fraud has occurred. Plaintiff's 10b-5 allegations satisfy neither requirement. Plaintiff's state law claims (which are subject to either two or three-year limitations periods) are similarly time-barred. And while Plaintiff attempts to salvage his state law claims under the delayed discovery rule, Plaintiff's own allegations (if assumed true) show that if this imagined scheme existed he should, in the exercise of reasonable diligence, have discovered his purported claims more than three years before he filed his Complaint. Thus, the delayed discovery rule will not save Plaintiff's claims.

Fourth, Plaintiff has failed to allege fraud with particularity. Nowhere does Plaintiff allege specific misrepresentations by anyone, nor does he specify where or how these misrepresentations were made.

Fifth, apart from conclusory allegations, Plaintiff does not make the damages allegations required to support any of his claims. And with respect to Plaintiff's interference claims, Plaintiff does not allege that the economic relationships in question were likely to provide future economic benefit, nor has Plaintiff alleged the specific, non-conclusory facts required to plead disruption of any relationships. Quite

1942332

the opposite. Plaintiff alleges that he stopped working with all his non-family clients, and does not allege whether or how his economic relationship with his family has been damaged. If anyone is to blame for Plaintiff's ruined reputation, it is Plaintiff.

For these reasons, the instant action should be dismissed in its entirety.

## II.     STATEMENT OF FACTS

Plaintiff, a purportedly sophisticated investment advisor to wealthy clients, alleges that he was induced to join a purportedly fraudulent scheme to defraud investors in various film projects, and that said scheme has been masterminded by Defendants RT Features and Rodrigo Teixeira. Complaint, ¶¶ 16, 24-25. The crux of Plaintiff's Complaint is his allegation that he and his clients relied on knowingly false guarantees by RT Features CEO Rodrigo Teixeira that the film participation deals in question would provide "very high returns." *Id*., ¶¶ 16-22.

Plaintiff alleges that his reliance on said guarantees was reasonable, even though the projects in question are mostly "low budget independent films" *id*. at ¶ 37, and **it is Defendant RT Features' custom and practice to require any investor to sign an agreement acknowledging that any investment involved "an extremely high risk of loss" and returns are not guaranteed, and acknowledging that the investor has not relied on any such guarantees**.

Plaintiff alleges that this purported fraudulent scheme has been ongoing since at least 2009. He also alleges that this alleged scheme, far from being a discrete, well-hidden enterprise, involved at least 48 projects listed on Defendant Teixeira's IMDb page. *Id*., ¶ 37 ("Teixeira's personal IMDb.com page indicates that from 2009 through 2020, Teixeira and his company RT Features have been involved in the production of 48 films and television shows."); *id*. at ¶ 96 ("These overt acts were repeated over 48 alleged film production and development projects."). And he alleges that his own clients had suspicions regarding RT Features in the early days of the alleged scheme, *id.* at ¶ 33 (RT Features had to "stave off questions from investors" regarding performance of projects), and these defrauded investors were his "closest business

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

1  and personal relationships." *Id*., ¶¶ 82. However, he also alleges that for years he

2  somehow remained blissfully unaware that these numerous investments that he

3  brokered for his closest business and personal relationships were non-performing, and

4  it was not until some time within the past three years that he learned of, and

5  investigated, these issues. *Id.* at ¶¶ 17, 42-47.

6  ## III.    RELEVANT LAW

7  To state a claim for relief that satisfies Rule 8 of Federal Rules of Civil

8  Procedure, the complainant must make more than "an unadorned, the-defendant-

9  harmed me" accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complainant

10  must plead "factual content that allows the court to draw the reasonable inference that

11  the defendant is liable for the misconduct alleged." *Id.* A pleading which offers

12  merely "labels and conclusions" or a "formulaic recitation of the elements" without

13  "further factual enhancement" will thus fail to satisfy Rule 8 and may be subject to

14  dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* Moreover, "only a

15  complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at

16  679.

17  Under Rule 12(b)(6), a complaint may be dismissed in the absence of sufficient

18  facts alleged under a cognizable legal theory. Fed. R. Civ. P. 12(b)(6); *Balistreri v.*

19  *Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990).

20  Under Rule 9(b), claims alleging fraud are subject to a heightened pleading

21  requirement, which requires that a party "state with particularity the circumstances

22  constituting fraud or mistake." Fed. R. Civ. P. 9(b). Additionally, all private securities

23  fraud complaints are subject to the "more exacting pleading requirements" of the

24  PSLRA, which require that the complaint plead with particularity both falsity and

25  scienter. *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 990 (9th Cir. 2009).

26  Finally, while the court, in ruling on a Rule 12(b)(6) Motion to Dismiss,

27  assumes the truth of all material factual allegations in the pleading and construes them

28  in the light most favorable to the complainant, *Cooper v. Pickett*, 137 F.3d 616, 623

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

(9th Cir. 1997), a court may consider allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG*, 476 F.3d 756, 763 (9th Cir. 2007).

## IV.  ARGUMENT

### A.  Plaintiff Lacks Standing To Assert His 10b-5 Claim

Plaintiff alleges that he was "induced to participate in a scheme to defraud investors who purchased what can be classified as securities under United States law." Complaint, ¶69. For at least two reasons, Plaintiff lacks standing to bring his 10b-5 claim.

First, Plaintiff does not allege that he himself was a purchaser or seller any of securities. At most, he alleges that he was "induced to participate in a scheme to defraud investors" who purchased securities. *Id.*, ¶ 69. But it is well-settled that a private action under Section 10(b) can be brought only by an actual purchaser or seller of a security. 15 U.S.C. § 78j(b). *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–31 (1975); *AB Investment LLC v. Regal One Corp.*, 2009 WL 10675242 (C.D. Cal. 2009) at *2 ("Only actual purchasers and sellers of security may bring a private action under the Securities Exchange Act of 1934, Rule 10b–5.") (internal quotes omitted). Thus, Plaintiff lacks standing to assert his 10b-5 claim.

Second, Plaintiff has not adequately alleged that any of the agreements at issue in his Complaint were securities within the meaning of Rule 10b-5. He does not attach any of the alleged securities to his Complaint, nor does he describe their terms in any meaningful detail. For this reason as well, Plaintiff lacks standing.

Accordingly, Plaintiff's 10b-5 claim must be dismissed.

### B.  Plaintiff's Claims Are Time-Barred

"10b-5 claims must be brought two years after the fraud should have been discovered and not more than five years after the fraud has occurred." *Tania Lee Price (Tilley) v. Charles Schwab & Co., Inc.*, 2015 WL 9694811 (C.D. Cal. 2015) at *3. Plaintiff's claims for intentional interference, negligent interference, and ordinary

negligence are subject to a two year limitations period. *So v. Shin*, 212 Cal.App.4th 652, 662 (2013) ("The limitations period for a cause of action for ordinary negligence is two years."); *Augusta v. United Service Automobile Assn.*, 13 Cal.App.4th 4, 10 (1993) (the statute of limitations is two years for interference with prospective business advantage claims.) And Plaintiff's fraud claim is subject to a three-year statute of limitations. *Sun'n Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 701 (1978). None of Plaintiff's claims accrued within these limitations periods.

Implicitly recognizing that his claims are time-barred, Plaintiff in his Complaint provides virtually no information as to when specific alleged misrepresentations occurred or when any alleged securities were purchased. However, he does provide enough information to show that his claims arose well before the applicable two and three-year limitations periods. Specifically, Plaintiff alleges that he was induced to join the alleged fraudulent scheme shortly after he met Defendant Rodrigo Teixeira **in 2009**. Complaint, ¶¶ 16, 24-25.

In an effort to save his claims, Plaintiff relies on the "delayed discovery" rule, asserting that he could not have discovered his claims until many years after they arose. *Id.*, ¶¶ 17. This is an admission that Plaintiff's claims are untimely, unless the delayed discovery rule applies. *McKelvey v. Boeing North American, Inc.*, 74 Cal.App.4th 151, 160 (1999) (by relying on the "'discovery rule,' plaintiffs concede by implication that, without it, their claims are barred by one or more statutes of limitations."). But, for multiple reasons, the delayed discovery rule does not apply here.

Under California law, in order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005).

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

1    Plaintiff cannot satisfy either requirement, let alone both.[2]

2        With regard to the first prong, Plaintiff does not specify when he discovered his

3    alleged claims, and certainly does not allege that he discovered his claims less than

4    two years before filing his Complaint on October 21, 2020. This renders all his claims

5    other than common law fraud untimely.

6        With regard to the second prong, even if he had alleged timely discovery,

7    Plaintiff's delayed discovery allegation is ineffective because he has not pled facts

8    showing an inability to have made earlier discovery despite reasonable diligence.

9    Quite the contrary. Plaintiff alleges that he discovered his claims when, after RT

10   Features' success with the film *Call Me By Your Name*, his clients complained to him

11   about RT Features' alleged failure to provide payments or information regarding its

12   various projects. Thus, he concedes that RT Features' alleged failure to provide

13   payments or information regarding projects raised a suspicion of wrongdoing. What

14   Plaintiff does not, and indeed could not, explain is why (if ones assumes his

15   allegations are true), he did not, in the exercise of reasonable diligence, develop this

16   suspicion of wrongdoing years earlier.

17       As discussed above, Plaintiff alleges that RT Features' purported fraudulent

18   scheme has been ongoing since at least 2009. Complaint at ¶¶ 16-22. He also alleges

19   that his purportedly defrauded clients were his "closest business and personal

20   relationships." *Id.*, ¶¶ 82. He alleges that this alleged scheme involved at least 48

21

22   _____

     [2] The requirements under 10b-5 are similar. *Briskin v. Ernst & Ernst*, 589 F.2d 1363,
23   1367 (9th Cir.1978) (the limitations period on a 10b-5 claim starts to run "(1) when
     the plaintiff had actual knowledge of facts sufficient to arouse suspicion in a
     reasonably prudent person, or (2) when the plaintiff had access to the "means of
24   knowledge" of such facts and a reasonably prudent person would have used those
     means before making the relevant financial decision. Moreover, if a prudent person
25   would have become suspicious from the knowledge obtained through the initial
     prudent inquiry and would have investigated further, a plaintiff will be deemed to
26   have knowledge of facts which would have been disclosed in a more extensive
     investigation."). In addition, 10b-5 claims that accrued more than 5 years ago are
27   absolutely time-barred, even if they could not have been discovered until more
     recently. *Tania Lee Price (Tilley)*, 2015 WL 9694811 at *3 ("10b-5 claims must be
28   brought  . . . not more than five years after the fraud has occurred.").

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

projects listed on Defendant Teixeira's IMDb page. *Id.*, ¶ 37 ("Teixeira's personal IMDb.com page indicates that from 2009 through 2020, Teixeira and his company RT Features have been involved in the production of 48 films and television shows."); *id.* at ¶ 96 ("These overt acts were repeated over 48 alleged film production and development projects."). And Plaintiff alleges that his clients had suspicions regarding RT Features in the early days of the alleged scheme. *Id.* at ¶ 33 (RT Features had to "stave off questions from investors" regarding performance of projects).

Taking these allegations to be true, an expert financial advisor, as Plaintiff purports to be, whose best and closest clients (including immediate family members) had numerous non-performing investments with RT Features (as Plaintiff alleges), and who exercised reasonable diligence (as required under California law), certainly should have had a suspicion of wrongdoing as to RT Features before October 21, 2017 (the earliest limitations date at issue here). And thus Plaintiff's claims are untimely. *Kleefeld v. Superior Court*, 25 Cal.App.4th 1680, 1683-4 (1994) ("the statute of limitations begins to run when the plaintiff suspects or should suspect that [his] injury was caused by wrongdoing, that someone has done something wrong to [him].").

Moreover, Plaintiff's allegation that the alleged fraud has damaged his reputation is inconsistent with any contention that he acted with diligence in connection with the investments at issue. If Plaintiff's family and closest friends blame him for their alleged losses, the obvious inference is that they believe he was asleep at the wheel. And such an inference renders Plaintiff's claims untimely.

On the other hand, if Plaintiff was in fact diligent and merely misled by supposed criminal masterminds running a decade-long impossible-to-detect scheme (as Plaintiff asserts, in conclusory fashion), common sense dictates that this could not have worsened the reputation of Plaintiff, a convicted felon for securities and tax fraud. Thus, Plaintiff's claims would be implausible, and subject to dismissal on that

16

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1  basis. *See Stuart v. Cadbury Adams USA, LLC*, 2010 WL 11596555 at *4

2  (implausible fraud claim dismissed for failure to satisfy Rule 8 requirement).

3      Thus, regardless of how Plaintiff's allegations are construed, they are

4  insufficient to survive a motion to dismiss.

5      **C.    Plaintiff Has Failed To Allege Reasonable Reliance or Satisfy Rule 8**

6      Plaintiff's 10b-5 claim, state law fraud claim, and interference claims (which

7  rely on Plaintiff's fraud claim) require Plaintiff to allege that he reasonably relied on

8  Defendants' purported misrepresentations. *Service by Medallion, Inc. v. Clorox Co*.

9  (1996) 44 Cal.App.4th 1807, 1816 (a complaint for fraud must allege . . . justifiable

10 reliance by the plaintiff); *Raschio v. Sinclair*, 486 F.2d 1029, 1030 (9th Cir.1973)

11 (complainant must show a purchase or sale in reasonable reliance to prevail on Rule

12 10b–5 claim). Plaintiff has failed to allege facts to support this required element.

13     Plaintiff asserts, in conclusory fashion, that he reasonably relied on RT

14 Features and Teixiera's false representations. Complaint, ¶ 76.  But conclusory

15 allegations of reliance are not sufficient to support fraud claims. *Glaski v. Bank of*

16 *America* (2013) 218 Cal.App.4th 1079, 1091 (fraud allegations insufficient due to

17 conclusory allegations of reliance).  Nor could Plaintiff make sufficient allegations to

18 prove reasonable reliance, because his reliance allegation is absurd.

19     The crux of Plaintiff's fraud claims is his allegation that he and his clients

20 relied on guarantees by RT Features CEO Rodrigo Teixeira that the film participation

21 deals in question would provide "very high returns." Complaint, ¶ 14. But Plaintiff

22 does not allege any facts to suggest that he could have reasonably relied on such

23 alleged guarantees.

24     Like any at-risk investment, whether in the stock market, real estate or a start-

25 up business, investments in connection with a film project inherently involve the

26 possibility of loss, whether a major film studio or RT Features is involved with such

27 project. And it is well-known that the "low budget independent film" business (as

28 Plaintiff describes RT Features' business) involves a significant risk of loss. In fact,

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Plaintiff alleges in his Complaint that Defendant Teixeira was known as a producer of "supposedly not profitable films." *Id.*, ¶ 14 (Defendant Teixeira "has been lauded in Variety Magazine as a producer on critically-acclaimed, but supposedly not profitable films.") Thus, it is simply absurd to suggest that a "successful investment professional, with a strong reputation for managing finances for high-net-worth individuals" (as Plaintiff claims to be) could reasonably have relied on purported **guarantees** of "very high returns" from "low budget independent films."

If that were not enough, it is RT Features' custom and practice[3] to require investors to sign an agreement that includes the following legal disclaimer (emphasis in original):

> [Investor] . . . fully understands, and can withstand, that there is an extremely high risk of loss associated with making the [investment] to [RT Features]. ***[INVESTOR] REPRESENTS THAT NO ASSURANCES, GUARANTIES, REPRESENTATIONS OR WARRANTIES HAVE BEEN GIVEN THAT ANY [RETURN OF ANY INVESTMENT] WILL BE REALIZED, AND THAT [INVESTOR] IS NOT RELYING AND HAS NOT RELIED ON ANY STATEMENTS, REPRESENTATIONS OR WARRANTIES OF ANY PERSON OR ENTITY IN MAKING THE DECISION TO PROVIDE THE [INVESTMENT] TO [RT FEATURES]. [INVESTOR] IS SOPHISTICATED IN INVESTMENT AND BUSINESS MATTERS AND IS KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY AGREEING TO PROVIDE THE [INVESTMENT]***.

Thus, Plaintiff and his clients were expressly advised by RT Features that investments involved an "**extremely high risk of loss**" and returns were **not** guaranteed, and they acknowledged that they were not relying on any such guarantees.

Under these circumstances, Plaintiff's purported reliance on RT Features' alleged guarantees could not be reasonable, and his claims must be dismissed.

---

[3] Because Plaintiff has utterly failed to plead his fraud claims with particularity (see Section IV.D, below), Defendants do not know which specific investor agreements are at issue in Plaintiff's claims.

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Plaintiff's claims also must be dismissed because they fail to satisfy the Rule 8 plausibility requirement. *Stuart,* 2010 WL 11596555 at *4 ("As the foregoing analysis shows, even accepting all of Plaintiff's allegations as true, she has not stated a claim that a reasonable consumer would be deceived or misled by Cadbury's representation that Trident White is clinically shown to 'whiten teeth.' Common sense, as well as the Trident White advertising itself, precludes Plaintiff from proceeding on the basis of the implausible (See Iqbal, supra) notion that a reasonable consumer would conclude that Trident White's 'whitening' claims refer only to 'intrinsic.').

### D.   <u>Plaintiff Has Failed To Allege Fraud With Particularity</u>

When pleading a fraud claim, "a plaintiff must satisfy the demands of Rule 9(b) . . . , which states that 'in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity.'" *Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1305 (S.D. Cal. 2003). "Courts have explained this rule to require that claims of fraud include the 'who, what, when, where, and how' of the alleged misconduct." *Id.* (*citing Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)). Consequently, fraud "claims must be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend the charge.'" *Id.* (citing *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1108 (9th Cir.2003)).

Here, Plaintiff has provided only the vaguest description of the alleged fraudulent scheme. He has provided almost no detail as to the actual wording of the alleged misrepresentations at issue. He has provided no specific information as to when any alleged misrepresentations took place. He has provided no information as to where these alleged misrepresentations were made, and no information as to how they were conveyed. In fact, other than his reference to the film *Call Me By Your Name*, Plaintiff has failed to identify any of the specific projects he claims are at issue, or any of the specific investors who supposedly were defrauded. And, as discussed above, he has not described, let alone attached, the alleged securities at issue here.

Plaintiff's refusal to provide the details required to support his far-fetched fraud

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

1  claims speaks volumes. And Plaintiff has clearly failed to satisfy his Rule 9(b)

2  particularity obligations, thus necessitating dismissal of his fraud claims and the

3  intentional interference claims that rely on his fraud claims.

4      **E.**    **Plaintiff Has Failed To Adequately Allege Damages Or Actual**

5          **Interference With Economic Relations**

6      Economic loss is an element of a 10b-5 claim. *Stoneridge Inv. Partners, LLC v.*

7  *Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008) (listing elements of a 10b-5 claim).

8  "The usual measure of damages for securities fraud claims under Rule 10b-5 is out-

9  of-pocket loss. That is, the difference between the value of what the plaintiff gave up

10 and the value of what the plaintiff received." *Ambassador Hotel Co. v. Wei-Chuan*

11 *Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999). Moreover, 10b-5 plaintiffs must plead

12 economic loss with particularity. *Oregon Public Employees Retirement Fund v.*

13 *Apollo Group Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) (applying Rule 9 pleading

14 standards to all elements of a 10b-5 claim). And 10b-5 plaintiffs must plead "actual

15 economic loss." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda,*

16 *Cal.*, 730 F.3d 1111, 1119 (9th Cir. 2013) (*quoting McCabe v. Ernst & Young, LLP*,

17 494 F.3d 418, 26 (3d Cir. 2007)) (requiring plaintiff to show actual economic loss to

18 satisfy loss causation and prevail on a 10b-5 claim).

19     Damages are also an essential element of any California tort claim. *Crum v.*

20 *City of Stockton*, 96 Cal.App.3d 519, 522, fn. 3 (1979). Under both FRCP 9(b) and

21 California law, the damages element of a common law fraud claim must be alleged

22 with particularity. *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1060 (2012) (each

23 element of a fraud claim must be alleged with particularity). And pleading that offers

24 merely "labels and conclusions" or a "formulaic recitation of the elements" without

25 "further factual enhancement" will fail to satisfy Rule 8. *Iqbal*, 556 U.S. at 678.

26     Here, Plaintiff's damages allegations are vague and insufficient. Plaintiff either

27 alleges that he has suffered unspecified damage, or that he has been "seriously

28 damaged reputationally." Complaint, ¶ 17.  But these are conclusory statements, not

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Glaser Weil

1942332

damages allegations made with particularity. Thus, Plaintiff's 10b-5 and state law claims must be dismissed.

Moreover, while Plaintiff asserts, in conclusory fashion, that Defendant RT Features has disrupted "economic relationships that were beneficial to him" (Complaint, ¶ 80, 83, 87, 90), Plaintiff provides no details as to how these relationships were supposedly disrupted. This is fatal to his interference claims. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (dismissing plaintiff's intentional interference with prospective economic advantage claim because plaintiff "merely states in a conclusory manner that it 'has been harmed because its ongoing business and economic relationships with [c]ustomers have been disrupted.' [Plaintiff] does not allege, for example, that it lost a contract nor that a negotiation with a [c]ustomer failed."); *Vascular Imaging Professionals, Inc. v. Digirad Corporation*, 401 F.Supp.3d 1005, 1012-1013 (S.D. Cal. 2019) ("general conclusory allegations regarding lost sales and the damage to the relationships between Plaintiff and its customers do not satisfy the pleading requirements of [an interference] claim.").

In fact, Plaintiff alleges that he has stopped working with his non-family clients. Complaint, ¶ 46.  Thus, he has not alleged a reasonable expectation of **prospective** economic advantage from those relationships. And he provides no basis to infer that his remaining clients, his family members, would withhold business because he was allegedly, through no fault of his own and through no lack of diligence on his part, duped into a fraudulent scheme. Plaintiff's interference claims fail for this reason as well.

For these reasons, all of Plaintiff's claims must be dismissed.

## V.    CONCLUSION

In light of the foregoing, Defendants respectfully request that the Complaint be dismissed in its entirety, and with prejudice.

1942332

1    DATED:  December 21, 2020         GLASER WEIL FINK HOWARD
                                       AVCHEN & SHAPIRO LLP
2

3
                                       By: */s/ G. Jill Basinger*
4                                          G. JILL BASINGER
5                                          *Attorneys for Defendants*
                                           *RT Features U.S., LLC,*
6                                          *Joseph B. Geus, and*
7                                          *J.G. Business Management, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1942332

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067.

On December 21, 2020 I served the foregoing document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)** on the interested parties (see attached list) as follows:

BY CM/ECF NOTICE OF ELECTRONIC FILING:  The above document(s) were electronically filed with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by e-mail or by other means permitted by the court rules.

BY EMAIL - by transmitting via email the document(s) listed above to the email address(es) set forth in the attached Service List on this day before 6:00 p.m.

I declare that I am a member of the bar of this court.

I declare under penalty of perjury that the above is true and correct.

Executed on December 21, 2020 at Los Angeles, California.

/Steven Basileo/
STEVE BASILEO

1942332

**SERVICE LIST**

MICHAEL C. FASANO (pro hac vice to be filed)
mfasano@fasanolawfirm.com
FASANO LAW FIRM, PLLC
2 S. Biscayne Blvd., Suite 1750
Miami, FL 33131
Telephone: (786) 530-5239
Facsimile: (954) 688-2492

Attorneys for Plaintiff
LUIZ MUSSNICH

ARASH SADAT (SBN 279282)
arash@sadatlawgroup.com
SADAT LAW GROUP
333 South Hope Street, 40th Floor
Los Angeles, CA 90071
Telephone: (213) 613-9434
Facsimile: (213) 613-0550

Attorneys for Plaintiff
LUIZ MUSSNICH

Glaser Weil

PROOF OF SERVICE

1942332