UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:20-cv-09679-MCS-AS | Date February 23, 2021 |
| Title *Mussnich v. Teixeira* | |

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (ECF NO. 24)

Defendants RT Features U.S., LLC ("RT US"), Joseph B. Geus, and J.G. Business Management, Inc. (together, "Moving Defendants"), move to dismiss Plaintiff Luiz Mussnich's First Amended Complaint (ECF No. 21). (Mot., ECF No. 24-1.) The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.

## I.  BACKGROUND

Mussnich is a Brazilian wealth management professional and patron of the arts. (FAC ¶¶ 8–18, 42.) Rodrigo Teixeira is a film producer and principal of several of the entity Defendants. (*Id.* ¶¶ 19–24, 27–30.) RT US is Teixeira's Los Angeles–based production company; Geus is the accountant and registered agent for service of process of RT US; and J.G. Business Management is a corporation owned and controlled by Geus. (*Id.* ¶¶ 19, 23, 27, 31–32, 73–74, 113.)

Mussnich helped Teixeira and RT US find investors for film projects by connecting Teixeira to contacts in Mussnich's professional network. (*E.g.*, *id.* ¶¶ 38–41, 43–44, 47–50, 52, 56.) On February 29, 2016, based on an oral agreement,

Mussnich gave 1,070,000 Brazilian reals to Teixeira for production of the film *Call Me by Your Name*. (*Id.* ¶¶ 59–60.)[1] On May 30, 2018, Teixeira wrote Mussnich that, after a delay, Teixeira would return Mussnich's principal plus a 75 percent return. (*Id.* ¶¶ 59, 69–72.) Defendants made excuses justifying further delays, but to date, Defendants still have not paid Mussnich. (*Id.* ¶¶ 59–60, 72–76, 104.) Further, prospective business partners have declined to do business with Mussnich due to his connections with Teixeira. (*Id.* ¶¶ 105–06.)

Mussnich initiated this action on October 21, 2020. (*See* Compl., ECF No. 1.) Mussnich asserts nine claims: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)–(c); (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d); (3) fraud; (4) intentional interference with prospective economic advantage; (5) negligent interference with prospective economic advantage; (6) conspiracy to commit fraud; (7) aiding and abetting fraud; (8) breach of oral contract; and (9) negligence. (FAC ¶¶ 107–87.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[1] The FAC alternatively characterizes this transfer as an investment and a loan. (*See* FAC ¶ 59 (using both terms).)

As a general rule, leave to amend a complaint that has been dismissed should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. DISCUSSION

### A. Adequacy of RICO Claims

To state a RICO claim, a plaintiff must allege (1) conduct (2) of an enterprise affecting interstate commerce (3) through of pattern (4) of racketeering activity (5) proximately causing harm to the victim. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Racketeering activity "encompass[es] dozens of state and federal offenses, known in RICO parlance as predicates." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016). A pattern of racketeering activity is "a series of related predicates that together demonstrate the existence or threat of continued criminal activity." *Id.* at 2096–97. "[F]ailure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Moving Defendants present several meritorious arguments for dismissal of Mussnich's RICO claims.

Moving Defendants contend there is no domestic injury. (Mot. 6.) A private RICO claimant must allege a domestic injury to business or property. *RJR Nabisco*, 136 S. Ct. at 2106. In his brief, Mussnich highlights allegations indicating that the purported racketeering scheme took place, at least in part, in the United States, and that several Defendants are based in the United States. (Opp'n 10–11, ECF No. 26.) Although the Ninth Circuit has not decided how to determine whether an injury is foreign or domestic, *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1132 (9th Cir. 2020), courts interpreting *RJR Nabisco* focus on the domestic or foreign character of the injury—not of the racketeering activity. *E.g.*, *Harmoni Int'l Spice, Inc. v. Bai*, No. 2:16-cv-00614-AB (ASx), 2019 U.S. Dist. LEXIS 166497, at *16–17 (C.D. Cal. July 2, 2019) (reviewing cases); *Tatung Co. v. Hsu*, 217 F. Supp. 3d 1138, 1156–57 (C.D. Cal. 2016) (finding domestic injury where "defendants specifically targeted their conduct at California with the aim of thwarting Tatung's rights in California," including a California arbitration award and judgment (internal quotation marks omitted)). The FAC does not present a reasonable inference that Mussnich suffered any injury in the United States. Instead, it indicates he felt his injuries in Brazil. (*E.g.*, FAC ¶ 25 (identifying Mussnich as a citizen of Brazil); *id.* ¶¶ 59, 104

(indicating loss of money in Brazilian currency given to Brazilian defendant); *id.* ¶ 140 (alleging damage to reputation "within his industry and within the arts community of Brazil").) *See Armada (Sing.) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094 (7th Cir. 2018) ("[A] party experiences or sustains injuries to its intangible property at its residence . . . ."). Without a domestic injury, Mussnich's claim may not proceed.

Moving Defendants argue that Mussnich fails to plead with particularity the fraud underlying the RICO claim. (Mot. 6–7.) Averments of fraudulent conduct are subject to the heightened pleading standard of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); *see also Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of rule 9(b) to RICO claims."). To meet Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" it, and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted). Mussnich pleads that Teixeira's enterprise "represented that it was raising funds from different investors for discrete film projects that would be segregated and accounted for, when in reality the funds were taken and used at [its] discretion." (FAC ¶ 123.) Mussnich "knows of approximately 30 capital contributions, loans, or investments" resulting from this conduct. (*Id.* ¶ 125.) Few of these instances are pleaded, and none is pleaded with particularity. For example, Mussnich pleads that his client lent money to defendants between 2011 and 2014, and that Teixeira convinced the client "to convert the loan to an investment" for film development in 2014. (*Id.* ¶ 54.) Mussnich does not articulate the place, means, or substance of Teixeira's communication. Further, Mussnich pleads that he facilitated at least 24 investment or loan agreements with Teixeira's enterprise between September 2011 and April 2019. (*Id.* ¶ 58.) Mussnich does not explain when, where, and how these deals occurred during this period, let alone to whom Teixeira's enterprise made false representations. Mussnich does not allege the pattern of racketeering activity with the required specificity.

Finally, Moving Defendants contend Mussnich cannot recover damage to reputation under RICO. (Mot. 8.) Although Mussnich pleads other forms of injury, he cannot recover under RICO for his alleged "loss of reputation." (FAC ¶ 129.) *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1086 (C.D. Cal. 2008) (collecting cases for the proposition that losses "attributed to the damage to plaintiff's reputation . . . are not compensable under RICO").

The Court declines to dismiss the RICO claims on the other grounds Moving Defendants present.[2] Mussnich's RICO and RICO conspiracy claims are dismissed.

### B. Timeliness

Moving Defendants contend that Mussnich's state-law claims are time-barred. (Mot. 8–11.)

The parties assume California law applies to the contract claim. (Mot. 8; Opp'n 17.) Claims based on oral contract carry a two-year statute of limitations. Cal. Civ. Proc. § 339(1). Moving Defendants argue that the claim is untimely, citing Teixeira's reporting of returns on May 30, 2018, over two years before Mussnich initiated this action. (Mot. 8–9 (citing FAC ¶ 182).) But Mussnich does not claim breach based on Defendants' reporting of returns; he claims Defendants breached by failing to pay any returns. (*Id.* ¶ 182.) The FAC does not clarify when the breach occurred, as Mussnich does not allege by when Defendants promised to pay him. On these facts, dismissal for untimeliness is inappropriate. *Syed v. M-I, LLC*, 853 F.3d 492, 507 (9th Cir. 2017) ("[A] complaint cannot be dismissed [for untimeliness] unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." (alterations in original) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995))).

The intentional interference, negligent interference, and negligence claims are subject to a two-year limitation period. Cal. Civ. Proc. Code §§ 335.1, 339(1). The fraud claim carries a three-year limitation period. *Id.* § 338(d). Although Moving Defendants argue that the timeline presented in the FAC begins in 2009, they concede that Mussnich provides limited information establishing when his claims accrued. (Mot. 9–11.) Mussnich's allegations indicate that the interference claims

---

[2] Moving Defendants seek dismissal on the basis that Mussnich's injuries arise from contractual relationships. (Mot. 7.) This summary argument is underdeveloped and unsupported by binding authority. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Moving Defendants also contend that Mussnich fails to allege facts tending to exclude an innocent explanation for the purported racketeering conduct. (Mot. 7.) According to the FAC, Teixeira's affiliate and codefendant Leonardo Maia admitted to Mussnich that, contrary to agreements with investors, Defendants paid prior obligations with funds for unrelated projects. (FAC ¶ 76.) Accepted as true, this allegation tends to exclude an innocent explanation. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

are timely, at least in part. (*See* FAC ¶ 106 (indicating prospective business partners rebuffed Mussnich's partnership in January 2020).) Mussnich also alleges that Teixeira and his associates provided excuses through 2019 for delayed payments, and that he had no reason to question the excuses until mid-2019. (*E.g.*, *id.* ¶¶ 72, 76, 124.) Under the discovery rule, Mussnich's claims may have accrued in 2019. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (observing that the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action"). Moving Defendants dispute that the discovery rule applies, (*e.g.*, Mot. 10–11), but the Court cannot conclude beyond doubt that no set of facts may render Mussnich's claims timely. Dismissal is inappropriate. *Syed*, 853 F.3d at 507.

### C. Reliance Allegations

A plaintiff claiming fraud must plead facts showing the plaintiff reasonably relied on the defendant's misrepresentations. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (reciting elements of fraud). Moving Defendants contend Mussnich's reliance allegations are conclusory and implausible. (Mot. 12–14.) Their argument relies in part on an excerpt from an investor agreement the Court cannot consider on this motion. (*Id.* at 13.) *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." (internal quotation marks omitted)).

Mussnich pleads that he relied on Teixeira's representation that RT US was raising money from investors for development of specific motion pictures. (FAC ¶¶ 143, 147.) Mussnich introduced Teixeira to potential investors in his professional network and personally gave money to Defendants to produce of *Call Me by Your Name*. (*See, e.g.*, *id.* ¶¶ 41, 43, 59.) Mussnich's actions, viewed in the light most favorable to him, demonstrate his reliance on Teixeira's representation. His reliance is not so implausible or unreasonable as to require dismissal. *See Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) ("Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." (internal quotation marks omitted)).

### D. Fraud Allegations

Moving Defendants contend the state-law fraud and interference claims fail because Mussnich did not plead his allegations of fraudulent conduct with particularity. (Mot. 14–15.) *See Vess*, 317 F.3d at 1105. As with the RICO claims, the fraud allegations supporting the state-law claims do not meet the Rule 9(b) standard. Mussnich identifies one central misrepresentation: "Teixeira represented that he was assisting RT US in the United States and Brazil to raise money from investors for legitimate participation rights in the development of specific motion pictures." (FAC ¶ 143.) Mussnich did not plead with specificity when, where, or how Teixeira made this representation. Mussnich alleges that Teixeira told him about investing in RT US motion pictures "[s]hortly after" he found Teixeira an investor for music publishing rights, which occurred sometime in or after 2009, when the two first met. (*See id.* ¶¶ 37, 40.) The date of the subject communication is unclear; its place and method are entirely unpleaded.

Allegations of this misrepresentation support all the fraud and interference claims. (FAC ¶¶ 143–47, 152–54, 160–62, 166–69, 173–76.) These claims are dismissed.

### E. Damages and Actual Interference Allegations

Moving Defendants argue that the damages allegations supporting Mussnich's tort claims are insufficient. (Mot. 15–16.) *See Crum v. City of Stockton*, 96 Cal. App. 3d 519, 522 n.3 (1979) (observing that damages are "an essential element of any tort"). Mussnich pleads that the fraudulent scheme caused him to lose the money he gave Defendants. (FAC ¶ 104.) He also lost potential business from two long-time contacts as well as his wealth management partnership's current and former financial partners. (*Id.* ¶¶ 105–06.) Moving Defendants have fair notice of the claimed damages.[3]

Moving Defendants criticize the FAC for declining to name Mussnich's prospective business partners. (Mot. 15–16.) Interference claims require a plaintiff to plead allegations that the defendant's conduct actually interfered with a

---

[3] Moving Defendants assert that damages supporting the fraud-based claims must be pleaded with specificity under Rule 9(b). (Mot. 15.) Not so. *See, e.g.*, *Wright v. Old Gringo Inc.*, No. 17-cv-1996-BAS-MSB, 2018 U.S. Dist. LEXIS 210597, at *45 (S.D. Cal. Dec. 13, 2018) (collecting cases).

prospective business relationship. *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017) (reciting elements of intentional interference claim); *Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827, 844 n.5 (2020) (reciting elements of negligent interference claim); *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1117 (C.D. Cal. 2015) (requiring facts "showing that [d]efendant interfered with [a] relationship with a particular individual" (alterations in original) (internal quotation marks omitted)). Mussnich's allegations identify specific individuals and financial partners that have declined to do business with him, even though the FAC does not mention them by name. (*See* FAC ¶ 105 (describing "an asset manager in Brazil" and "a water engineering executive").) At the pleading stage, these allegations suffice. *See Qwest Commc'ns Corp. v. Herakles, LLC*, No. 2:07-cv-00393-MCE-KJM, 2008 U.S. Dist. LEXIS 22154, at *30–31 (E.D. Cal. Mar. 20, 2008) (allowing interference claim where "Qwest actually pointed Defendants to prospective customers with whom Qwest had already engaged in some form of relationship"); *cf. UMG Recordings*, 117 F. Supp. 3d at 1117 (dismissing interference claim where "none of the purported prospective relationships is identified").

## IV. CONCLUSION

The motion is granted in part and denied in part. The Court dismisses the RICO, conspiracy to violate RICO, fraud, intentional interference with prospective economic relations, negligent interference with prospective economic relations, conspiracy to commit fraud, and aiding and abetting fraud claims against Moving Defendants. The motion is denied in all other respects.

On its own motion, the Court dismisses the RICO, conspiracy to violate RICO, fraud, intentional interference with prospective economic relations, negligent interference with prospective economic relations, conspiracy to commit fraud, and aiding and abetting fraud claims against the nonmoving defendants. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008).

Many of the pleading deficiencies identified in this Order may be curable. Given the Ninth Circuit policy of granting leave to amend with "extreme liberality," *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (internal quotation marks omitted), the Court gives Mussnich leave to amend.

Mussnich may file an amended complaint no later than 14 days from the date of this Order, if he can do so consistent with Federal Rule of Civil Procedure 11(b)

and this Order. Failure to file a timely amended complaint will waive the right to do so. Leave to add new defendants or claims must be sought by a separate, properly noticed motion.

**IT IS SO ORDERED.**